IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AMIYA K. MANDAL,

       **Petitioner,**

                                 **Criminal Action No. 5:09cr39**

**v.**                               **Civil Action No. 5:13cv87**

                                 **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On July 10, 2013, the petitioner, a former prisoner who finished his term of incarceration[1] and is now on lifetime supervised release,[2] filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody through retained counsel. (Dkt.# 69). On July 22, 2013, the undersigned made a preliminary review of the petition and found that summary dismissal was not warranted. Thus, the respondent was directed to file an answer. On September 20, 2013, the government filed its response in opposition. (Dkt.# 76). On October 18, 2013, petitioner replied. (Dkt.# 79).

This matter, which is pending before me for report and recommendation pursuant to LR PL P 2, is ripe for review.

### II. Facts

#### A. Conviction and Sentence

On September 8, 2009, the petitioner, Amiya K. Mandal, a.k.a. "hungindian_09," signed a plea agreement in which he agreed to plead guilty to Count One of a one-count Indictment, charging him with Interstate Travel to Engage in Illicit Sexual Conduct, in violation of Title 18, United State

---

[1] Petitioner was released from prison on February 7, 2013. Dkt.# 77 at 1.

[2] Petitioner's supervised release began on February 7, 2013. See Dkt.# 77.

Code, §2423(b).  In the agreement, petitioner waived his right to appeal and to collaterally attack his

sentence.  Specifically, the petitioner's plea agreement contained the following language regarding

his waiver:

> 13.  The defendant is aware that Title 18, United States Code, Section 3742 affords
> him the right to appeal the sentence imposed. Acknowledging all this, the defendant
> knowingly makes the following waiver of his appellate rights in exchange for the
> concessions made by the United States in this plea agreement: (1) The defendant
> knowingly waives the right to appeal his sentence within the maximum provided in
> the statute of conviction (or the manner in which that sentence was determined) on
> the grounds set forth in Title 18, United States Code, Section 3742 or on any ground
> whatever, in exchange for the concessions made by the United States in this plea
> agreement; and (2) the defendant also waives his right to challenge his sentence, or
> the manner in which it was determined, in any collateral attack, including, but not
> limited to, a motion brought under Title 28, United States Code, Section 2255.

(Dkt.# 19, ¶13 at 5).

On September 25, 2009, the petitioner entered his plea in open court.  After being sworn,

petitioner was advised by the Court that the oath he had taken meant he must tell the truth.  (Plea

transcript, Dkt.# 81 at 2).  The Court instructed him to ask if there was anything he did not

understand during the hearing, and to feel free to consult with counsel at any time. (Id.).  Petitioner

testified that he was thirty-nine years old, with a bachelor's degree in computer science, and an

approximately eighteen-year history of working in software consulting. (Id. at 3).  Petitioner denied

having consumed any medicine, drugs or alcohol within the previous 24 hours. (Id. at 3 - 4).  When

asked by the Court whether he had ever been treated for any mental illness or addiction to narcotic

drugs of any kind, petitioner denied that he ever had. (Id.).  Petitioner testified that he understood the

purpose of the plea hearing that day, and denied having any hearing impairment or other physical

disability that would prevent his full participation in the hearing.  (Id.).  He also testified that he

could read, write and understand English.  (Id.).

The Assistant U.S. Attorney ("AUSA") read or summarized each paragraph of the plea

agreement in open court. (Id. at 5 – 8).  The AUSA explained that paragraph 3 of the agreement

contained a binding agreement between the Government and petitioner, that specified that the

ultimate sentence to be imposed was one that was below the advisory guideline:[3] 37 months incarceration, to be followed by lifetime supervised release. (Id. at 5). Petitioner advised the Court that he understood and agreed with all the terms and conditions of the plea agreement; had gone over it with his attorney before signing it; and that his attorney had answered any questions he had about it. (Id. at 9). He denied having any other "deals or side agreements with the Government," not contained within the plea agreement. (Id.).

The Court asked petitioner if he understood that the Court was not bound by any recommendation or stipulation contained within the plea agreement, and if the Court later discovered, based upon an "independent investigation by the probation officer or on any other evidence" that it could not go along with the recommendations or stipulations of the agreement, that petitioner would still be bound by his plea agreement and would not have a right to withdraw it. Petitioner answered "Yes, Your Honor." (Id.).

The Court specifically asked petitioner if he understood the waiver of appellate and post-conviction relief rights contained in the plea agreement, and petitioner said that he did. (Id. at 10 and 15). However, the court advised petitioner he waived his right to seek post-conviction relief except for claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. (Id.). The Court asked petitioner if he understood that he would be required to comply with certain requirements of the Sexual Offender Registration and Notification Act, and other related provisions, and petitioner said that he did. (Id.) The Court asked petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights and the sexual registration provision, and counsel said that he did. (Id. at 10 - 11).

The Court explained that the maximum sentence petitioner could exposed to would not be more than 30 years' incarceration, with a period of supervised release of not less than five years or as much as a lifetime period. (Id. at 13). Petitioner said he understood. (Id. at 14). Further, the Court

---

[3] The advisory sentencing guideline recommended 46 – 57 months. Dkt.# 61 at 1.

explained, if petitioner were on supervised release, he could, following a petition for revocation; a hearing on that petition; and a finding of revocation; be sentenced to further incarceration, should the supervised release be a set number of years. Petitioner said that he understood. (Id.). The Court asked then asked petitioner if he understood that the Court was not going to be able to determine what sentence would apply until after the PreSentence Investigation Report ("PSR") was completed, and petitioner, his counsel, and the Government all had an opportunity to review and make any objections to it, and petitioner stated he understood. (Id. at 14). The Court explained the concept of relevant conduct to petitioner, advising him that it could take into account, when calculating his sentence, any conduct, circumstances or injuries relevant to his crime, and petitioner said that he understood. (Id. at 14 - 15). Petitioner further indicated that he understood that the Court had the authority, in some circumstances, to depart from the advisory guidelines and impose a sentence either more or less severe than that called for by the Guidelines. (Id. at 15). The Court asked petitioner if he understood that if the Court accepted his plea, and he received a sentence that was more severe than he had hoped for, he would still be bound by his plea and have no right to withdraw it, and petitioner said "Yes, Your Honor." (Id. at 16).

The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 16 - 19). The Court inquired of defense counsel whether he believed that petitioner fully understood the consequences of a guilty plea, and counsel said that he did. (Id. at 19). During the plea hearing, the Government presented, by way of a proffer, a detailed summary of the evidence obtained by the nonprofit group Perverted Justice, to establish a factual basis for the plea. (Id. at 19 - 23). The petitioner initially contested the part of the factual basis that indicated he struck the police officer when first apprehended; after clarification to indicate that petitioner's car briefly collided with the arresting officer's car, but caused no significant damage, petitioner did not contest the factual basis of the plea. (Id. at 24).

4

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count One of the one-count indictment. (Id. at 25).  The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.).  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.).

When asked if his attorney had adequately represented him, he stated "[y]es, Your Honor." (Id. at 26).  He further stated that his attorney had left nothing undone. (Id).  Finally, petitioner said that he was in fact guilty of the crime to which he was pleading guilty.  (Id. at 26 - 27).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt.  (Id. at 27).  The petitioner did not object to the Court's finding.  Petitioner was continued on his personal recognizance bond, subject to certain exceptions. (Id. at 27 – 28).

On June 4, 2010, petitioner appeared before the court for a bond revocation hearing over the violation of the conditions of his pretrial release. (Dkt.# 55 at 4).  During the hearing, the Government presented the testimony of Dennis Martin, petitioner's probation officer, of the United States Probation and Pretrial Services, from the Western District of Pennsylvania, Pittsburgh office, and Daniel Fugate, United States Probation Officer for the Northern District of West Virginia, to establish a factual basis for the plea.  Testimony was heard regarding spot check searches conducted on petitioner's laptop computers, and the discovery of three digital head and shoulder photos of petitioner, created on April 25, 2010 and March 27, 2010 respectively, and altered to make him appear younger, that had been uploaded to the internet. (Id. at 15 – 22; 34 - 36). There was also testimony regarding internet websites petitioner had visited, including Facebook, with the creation of Facebook account under the username amandal@facebook.com; match.com, tinychat.com, find.room/darkmans_room, all in violation of one of the conditions of his pretrial release, prohibiting

5

him from accessing the internet except for work or for matters related to his wife's medical treatment.[4] (Id. at 5 -6; 43; 22 – 30; 36 - 42).

Defense counsel then presented petitioner's wife, Nandini Mandal, who testified that she was not the one who uploaded the altered photographs of her husband (Id. at 51 – 51); she had not been the one to access match.com (Id. at 52), had not gone on tinychat.com and shared audio and video feed with anyone (Id. at 54); had never gone to dark_mans chat room (Id. at 53); her husband had no Facebook account; she had never used the account amandal@facebook.com and her own Facebook account was under the user name, nmandal@facebook.com. (Id. at 53). Counsel also presented Kelly Gaudio, his paralegal, to testify as to internet research she performed which was unsuccessful in locating a Facebook account under petitioner's name, but she could not recall if she had not searched for amandal@facbook.com. (Id. at 55 – 58).

At the conclusion of the hearing, the Court found that petitioner had violated the terms of his release, revoked his release, and remanded him into the custody of the U.S. Marshal. (Id. at 58).

On July 8, 2010, the Court sentenced the petitioner to 37 months imprisonment on Count One and a term of lifetime supervised release. (Dkt.# 58; 60; and 61).

**B. Appeal**

Petitioner did not file an appeal.

**C. Federal Habeas Corpus**

The petitioner raises one ground of ineffective assistance of counsel, asserting that during plea negotiations, counsel was deficient for advising him to accept the offer of a second plea agreement containing a provision for lifetime supervision,[5] in light of the fact that petitioner, an alien and native of India, was expected to deported after he served his sentence anyway. Petitioner

---

[4] Petitioner's wife was in treatment for acute myelogenous leukemia at the time. Dkt.# 55 at 47.
[5] Both plea agreements specified that the maximum sentence petitioner could receive was imprisonment for 30 years, a fine of $250,000.00, and a term of not less than 5 or lifetime supervised release. However, the second and final plea agreement contained a binding agreement between the parties regarding the ultimate sentence petitioner would receive, i.e., the 37-month sentence and lifetime supervised release.

contends that because on July 10, 2012, just over two years after he was sentenced, deportation proceedings were terminated, and on July 17, 2012, the Department of Homeland Security cancelled its previously-placed detainer on him, counsel's advice based on the assumption of deportation was "questionable at best, prejudicial . . .and lacked . . . appropriate knowledgeable and intelligent consideration for the agreement."   (Dkt.# 69 at 2).   Therefore, he argues, the termination of deportation proceedings operated to create a newly-discovered issue of ineffectiveness of counsel, rendering the filing of the §2255 petition timely, because it was filed within one year of July 10, 2012.

As relief, petitioner requests that the lifetime supervised release provision in his plea agreement be vacated, reduced and/or modified, or, alternatively, that he be granted an evidentiary hearing to "properly develop the record."

### D.  Government's Response

The Government argues that petitioner's motion should be dismissed, or, if decided n the merits, be denied without an evidentiary hearing because:

1) petitioner's §2255 motion is untimely;

2) the issuance of a legal decision, i.e., the immigration decision, is not a newly-discovered fact as contemplated by 28 USC §2255(f)(4);

3) the petitioner has alleged no fact to invoke the doctrine of equitable tolling;

4) petitioner's claim of ineffective assistance has no merit.

### E. Petitioner's Reply

Petitioner reiterates his arguments and attempts to refute the Government's on the same.

### III.   Standard of Review

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded

7

the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va Jan. 4, 2006).

## IV. Analysis

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2255.[6]

The limitation period shall run from the last of:

1. The date on which the judgment of conviction becomes final;

2. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[7] or

4. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

In the instant case, the §2255 motion is clearly untimely under subsection 1. In most cases, a judgment of conviction becomes final when the time for filing a direct appeal expires. Aikens v. United States, 204 F.3d 1086, 1089, n.1 (11th Cir. 2000). There are two recognized exceptions to this general rule which apply when a federal prisoner seeks direct appellate review of his conviction or

---

[6] The AEDPA applies to those cases filed after April 24, 1996, the effective date of the AEDPA. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), cert. denied, 523 U.S. 371 (1998).

[7] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive. Dodd v. United States, 545 U.S. 353 (2005).

sentence. First, if upon disposition of a direct appeal, a federal prisoner files a writ of *certiorari* with the U.S. Supreme Court, the conviction becomes final when the Supreme Court either denies *certiorari* or issues a decision on the merits. *See* <u>Washington v. United States</u>, 243 F.3d 1299, 1300 (11th Cir. 2001). Second, if the federal prisoner does not timely file a *certiorari* petition after the disposition of his direct appeal, the conviction becomes final on the date on which the prisoner's time for filing such a petition expires, or ninety days after the entry of the judgment on direct appeal. *See* <u>Clay v. United States</u>, 537 U.S. 522, 532 (2003). Here, neither exception applies because the petitioner did not file a direct appeal of his conviction.

For federal prisoners, the time for filing a direct appeal expires fourteen days after the written judgment of conviction is entered on the criminal docket. <u>See</u> Fed. R. App. P. 4(b)(1)(A)(i) and 4(b)(6)). Petitioner's judgment was entered on the record on July 8, 2010, the day he was sentenced. Petitioner never filed a direct appeal. Therefore, his conviction became final on July 22, 2010, the date his time to file a direct appeal expired. *See* <u>Clay v. United States</u>, *supra.* Accordingly, under AEDPA, he had until July 22, 2011 to timely file his habeas corpus petition under AEDPA. Petitioner did not file his §2255 motion until July 10, 2013, one year, eleven months and eighteen days after the statute of limitations had expired. Thus, petitioner's §2255 motion is untimely under subsection 1.

Because the petitioner does not allege the Government created an impediment to his filing a timely §2255 motion or that a right newly recognized by the Supreme Court has been made retroactively applicable to cases on collateral review, subsections 2 and 3 are not applicable to this case.

The Court further finds that subsection 4 does not apply because 28 USC §2255(f)(4) specifies that the limitations shall run from 1-year period of limitation [shall run from] . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. Here, however, a "fact," as correctly pointed out by the Government, is

not the issuance of a legal decision. "The term "fact" as used in §2255(f)(4) refers to an actual or alleged even or circumstance, but not to the date a petitioner recognizes the legal significance of such event." United States v. Pollard, 416 F.3d 48, 55 (D.C. Cir. 2005)(Sentelle, J., relying on and citing *Black's Law Dictionary* 7th Ed. at 610). See also: United States v. Bennett, 2013 U.S. Dist. LEXIS 7279 *14-15 (W.D.N.C. Jan. 15, 2013); Moore v. United States, 2013 U.S. Dist. LEXIS 24489 *10 (W.D.N.C. Feb. 22, 2013).

Moreover, the law on this point is overwhelming. Each circuit that has addressed the issue has held that a legal decision that does not change any part of the petitioner's own criminal history constitutes a ruling of law, rather than a new factual predicate for a federal habeas claim. See Lo v. Endicott, 506 F.3d 572, 575-76 (7th Cir. 2007) E.J.R. E. v. United States, 453 F3d 1094, 097-98 (8th Cir. 2006); Shannon v. Newland, 410 F.3d 1083, 1089 (9th Cir. 2005).

Elsewhere, other circuits have opined that §2255(f)(4) does not provide for AEDPA's one-year limitations period to begin to run upon a prisoner's recognition of a new legal ground for a §2255 petition. See United States v. Collins, 364 Fed.Appx. 496, 498 (10th Cir. 2010)(order denying certificate of appealability)("Section 2255(f)(4) speaks to discovery of facts supporting a claim, not a failure to appreciate the legal significance of those facts."); Barreto-Barreto v. United States, 551 F.3d 95, 99 n.4 (1st Cir. 2008)(noting that "the discovery of a new legal theory does not constitute a discoverable 'fact' for the purposes of §2255(f)(4)"); United States v. Pollard, *supra* at 55 (noting that for the purposes of §2255(f)(4), "time begins when the prisoner knows (or through due diligence could discover) the important facts, not when the prisoner recognizes their legal significance" (*quoting* Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (quotation marks omitted))); Tellado v. United States, 799 F.Supp.2d 156, 164 (D. Conn. 2011). Accordingly, any reliance by petitioner on §2255(f)(4) is unavailing and petitioner is not entitled to equitable tolling.

Finally, petitioner's claim of ineffective assistance has no merit. Review of an August 21, 2012 letter from defense counsel to petitioner indicates that petitioner was well aware, at the time he entered his plea, what the risks were. That letter states, in pertinent part:

> Congratulations on your immigration victory. It is my understanding that you would like to appeal the court's sentence as it relates to your lifetime of supervised release.
>
> Recall, that due to the nature of the charges and the opprobrium that society puts on the conduct you were engaged in, we negotiated and agreed upon a "binding plea." First, we negotiated which statute you were to be charged under and this took away a mandatory minimum sentence of at least ten years and, according to Mr. Griffin,[8] gave him the opening to win your immigration case." Additionally, as a part of our plea, the state dismissed . . . [its] charges . . . ***This plea also took away the opportunity for the prosecution to argue for various enhancements to increase your sentence which was very important as you apparently engaged in similar online activity during the time you were on bond and your wife was hospitalized. This resulted in your bond being revoked and you being detained, but it did not enhance your sentence as it could have with an open plea***. We agreed upon a specific sentence leaving the court no discretion if it accepted the plea . . .
>
> ***During our plea negotiations we attempted to remove the lifetime supervised release portion but the prosecution would not budge on it. The government's position was that the court typically ordered lifetime supervision and it was not negotiable***. The government also assumed that you would be deported so it wouldn't matter.
>
> As you stated in your letter, it is true that as part of your plea you waived your right to appeal your sentence. You also waived your right to a collateral attack of your sentence. ***Procedural time periods have run for the filing of those actions.***
>
> It is also true that we believed at the time of the plea negotiations . . . that you would be deported. However, it is my opinion that such a belief is not enough to throw out the lifetime supervision portion of our agreement with the government . . .

Dkt.# 69-4 at 1 – 2 (emphasis added).

It is clear from the record that petitioner, who had two young children and a seriously ill wife who would be left without his support during his incarceration, was well aware of the very favorable deal that defense counsel successfully negotiated for him. Petitioner knew that the deportation decision was unknowable to all, because it had yet to be decided; but because of the risk of a possible

---

[8] It is unclear from the record who "Mr. Griffin" is, but the undersigned presumes from the context that it was the attorney who represented petitioner on his immigration/deportation proceedings.

30-year sentence, with the specter of certain deportation afterwards, should he proceed to trial, he agreed to a sentence below the guidelines and lifetime supervision. Having now obtained the important benefits provided to him in the plea agreement, he now seeks to blame counsel because he did not receive even more concessions.

### V. Recommendation

The undersigned recommends that the Court enter an Order **DENYING** the petitioner's §2255 motion (Dkt.# 69) as untimely and **DISMISSING** this action from the Court's docket.

**Within fourteen days (14)** after being served with a copy of this Recommendation with the Clerk of the Court, **or by September 22, 2014,** any party may file written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. §636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to electronically transmit a copy of this Report and Recommendation to all counsel of record.

Dated: September 8, 2014

/s/    James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE